KENDIG v. KNIGHT.

| 60 | 29 |
| 94 | 398 |
| 60 | 29 |
| 112 | 315 |
| 60 | 29 |
| 118 | 722 |
| 60 | 29 |
| 144 | 630 |

1. Cities: ORDINANCE: THE TERM "HEREAFTER" CONSTRUED. Where a city pursuant to the authority contained in sections 466 and 478 of the Code, passed a general ordinance in relation to gutters to be constructed in the streets, prescribing the mode in which the charge on the respective owners of lots or lands, and on the lots and lands, should be assessed and determined, which ordinance provided that it should take effect five days after its publication, and provided, also, that "the city council may at any time *hereafter*, by *resolution*, direct and provide for guttering any of the streets of said city," *held* that the word "hereafter" referred to the date of the passage, and not to the date of the taking effect, of the ordinance, and a *resolution* passed thereunder between these dates was valid.

2. ——: TAX FOR GUTTERS: HOW ASSESSED. In the case above stated, the resolution, passed pursuant to the ordinance, provided that the expense of the gutters "shall be paid by the property holders along each side of said streets in proportion to the frontage each may own." *Held*, that the tax levied thereunder was not invalid because it was not provided that it should be assessed as a charge on the *abutting property*. Such provision was not necessary, as section 478 of the Code makes the charge, when assessed, a lien on the real estate.

3. ——: ——: ——. Neither was an assessment which correctly described plaintiff's property, but attached the wrong initials to his name, invalid on that account, since the statute makes the charge a lien on the property, regardless of the name of the owner.

4. ——: ——: TO WHOM ASSESSED: STATUTE CONSTRUED. The cost of constructing a gutter along a city street is, under section 466 of the Code, chargeable only to the owners of the property abutting on that portion of the street along which the gutter is constructed.

5. ——: ——: IRREGULARITY: TAX NOT AVOIDED. The fact that the gutter was constructed on two streets, and under different resolutions, and that, in making the assessments, the entire work on both streets was taken into consideration, *held* not such an irregularity as would, under Code, section 479, render the tax illegal: Following *City of Burlington v. Quick*, 47 Iowa, 222.

6. ——: ——: ACTION TO RESTRAIN: PRACTICE: COUNTER-CLAIM. In an action against a city to restrain the collection of a legal tax, wherein the city set up a counter-claim and asked judgment for the tax, *held* that it was error for the court to refuse the judgment asked in the counter-claim.

### *Appeal from Madison Circuit Court.*

### TUESDAY, DECEMBER 5.

ACTION in equity to restrain the sale of certain real estate belonging to the plaintiff, for the purpose of paying a certain special tax assessed by the city of Winterset, for the construction of a gutter. A temporary injunction was granted which was dissolved at the hearing. The city pleaded a counter-claim and asked that a judgment be rendered against the plaintiff for the amount of the tax. Such relief was refused and both parties appeal.

*McCaughan & Dabney*, for appellant.

*Ruby & Wilkin*, for appellee.

SEEVERS, CH. J.—I.   Section 466 of the Code provides that cities "shall have power to construct sidewalks  *  *  *

*1. CITIES: ordinance: the term "hereafter" construed.* and gutter any highway  *  *  therein and to levy a special tax on the lots and parcels of land fronting on such highway  *  *  to pay the expense of such improvement," and section 478 provides that cities may by a general ordinance prescribe the mode in which the charge on the respective owners of lots or lands, and on the lots or lands, shall be assessed and determined."

On August 7th, 1875, the city passed such an ordinance, and among other things provided, "that the city council may at any time hereafter, by resolution,  *  *  *  direct and provide  *  *  for guttering any of the streets of said city." The ordinance provided it should take effect "five days after its publication," and it was published on the 12th day of August.   As by its own terms the ordinance did not take effect until the time stated, it follows that it was not in force until the 17th day of August, 1875.

On the 9th day of August, 1875, the resolution contemplated in the ordinance was passed, and on the 14th of said month an additional resolution was passed by the city council, and thereunder the gutter in question was constructed and the tax assessed.

It is insisted, as the ordinance prescribes that the council should by resolution "hereafter" passed provide for guttering the streets, that a resolution passed before the ordinance took effect is not a compliance therewith, and therefore is void, and that the tax is illegal and cannot be enforced.   It is further said that the word "hereafter" relates to the time the ordinance took effect, and not to its passage.   In support of this proposition *Charless & Blow v. Lamberson*, 1 Iowa, 435; *Bennett v. Bevard*, 6 Id., 82, and *Thatcher v. Haun et al.*, 12 Id., 303, are cited.   These cases hold that the word, "hereafter," or similar words, as used in certain sections of the Code of 1851, relate to the time the Code, or certain portions thereof, took effect, and not to the passage thereof.   We do

not think these cases have much bearing on the question before the court, because the word "hereafter" may mean either period, and the object, intent and purpose in view must be considered in determining which. By their terms the resolutions were in force from and after their adoption, but no right could accrue or be exercised thereunder until they were vitalized by the taking effect of the ordinance. Both, therefore, became effective at the same time, and it was not until after such time that the construction of the gutter was commenced or steps in that direction taken.

The ordinance was in fact passed by the council before the resolutions were adopted, and we see no reason for holding that the word "hereafter" in the former should be construed to mean after, by its terms, the ordinance took effect. On the contrary, we think when the object and purpose are considered, the word "hereafter," should be construed to mean the time the ordinance was in fact passed. The object of both was to legally provide for the construction of gutters, and the meaning and evident intent of the ordinance was that, at any time after its passage, the counsel by resolution might provide the mode in which the charge or cost of the gutter should be assessed.

We, therefore, are of the opinion that the council properly assumed, and had the power and jurisdiction, to direct the improvement and assess a tax to pay therefor. The cases of *The City of Dubuque v. Wooton*, 28 Iowa, 571, and *Roche v. The City of Dubuque*, 42 Id., 250, are distinguishable, because the point decided in these cases was that the tax could not be enforced for the reason that the required publication of the resolution had not been made.

II. The ordinance provides that the resolution to be thereafter passed shall direct whether the whole cost of the im-

2. ——: tax for gutters: how assessed. provement or a part thereof should be assessed on the "owner of the property"; and the resolutions provide that the expense of the gutter "shall be paid by the property holders along each side of said streets in proportion

to the frontage each may own." It is insisted that the collection of the tax cannot be enforced because it was not provided that the cost of the gutter should be assessed as a charge on the abutting property.

The grant of the requisite power is contained in section 466 of the Code, and the "mode in which the charge shall be assessed on the respective owners of the lots or lands" is contained in section 478, and it is therein provided that such charge "when assessed shall be payable by the owner or owners at the time of the assessment, personally, and shall also be a lien upon the respective lots or parcels of land."

It will be observed the statute makes the charge when assessed a lien on the real estate. Possibly it was essential that the council should provide the mode in which the tax should be assessed. This was done, but it was not essential that the counsel should declare the same should be a charge or lien on the property, because the statute so provides.

III. The assessment made correctly described the plaintiff's property, but stated the name of the owner to be "A. J. Kendig" and because of this fact it is said the tax cannot be enforced. As the statute made the tax a lien on the property, it was immaterial who was described as owner. Clearly the plaintiff could not have been mislead or in any manner prejudiced.

3. —— : —— : *to whom assessed : statute construed.*

IV. The gutter in question was constructed along a portion of certain streets, and the cost thereof was assessed against the owners of property abutting on that portion of the streets improved. It is said that such assessment is illegal, because the statute, Code, section 466, provides that the tax shall be assessed on the land "fronting on the highway," and this means the whole street, and not the part improved. It is true that a property owner who resides on a street remote from the part improved may be incidentally benefited thereby. So may a property owner who resides in any part of the city, and there is as much justice in assessing one of these persons as the other, where but

4. —— : —— : *to whom assessed : statute construed.*

one hundred yards of a street is improved which is a mile long. The statute provides that a majority of the owners of property liable to assessment may petition therefor.    Code, § 466.

It is not likely that property owners who were distant from the proposed improvement would do this if they are liable to contribute therefor, and yet the owners of property abutting on the part to be improved might do so.    It seems to us that the construction contended for would greatly retard the improvement of cities, and we do not believe it should be adopted.    *Wolf v. City of Keokuk*, 48 Iowa, 129, is inconsistent with such construction.    We are of the opinion that the statute should be construed as authorizing the assessment to be made on the owners of property abutting on the part of the street improved.    They are the persons who are directly bene- fited and whose property it must be presumed is enhanced in value by the improvement.    We are aware that a contrary view is expressed in *Willer v. St. Paul*, 5 Minn., 95.    But the reasoning in that case is not satisfactory to our minds, and, we therefore decline to follow it.

V.    Lastly, it is urged that the gutter was constructed on two streets, and under different resolutions, and that in making the assessment the entire work on both streets was taken into consideration, and therefore the tax connot be enforced.    This question was considered and determined in *The City of Burlington v. Quick*, 47 Iowa, 222, and it was held that such an irregularity, conceding it to be one, would not, under Code, section 479, render the tax illegal, or prevent its enforcement.

*5. ——: ——: irregularity: tax not avoided.*

VI.    The defendant pleaded a counter-claim, and in substance asked a judgment for the amount of the tax, the right thereto being based on sections 478 and 479 of the Code.    Such relief was refused, as we suppose, because it was deemed by the court to be unnecessary.    But as the defendant then and now insists thereon, we think it should have been granted.    The ruling of the Circuit Court will be reversed on defendant's appeal, and on the plaintiff's                                          AFFIRMED.

*6. ——: ——: action to restrain: practice: counter-claim.*