J. A. FISHER v. L. E. WHITHAM & COMPANY.

No. 5693. Decided June 10, 1931.
(39 S. W., 2d Series, 869.)

*Carrigan, King & Sulres,* for appellant.

Under the terms of the contract between appellee and the city, the former was required to commence paving within a reasonable time from the date of the contract and complete same within one hundred days thereafter, hence, after the jury found that appellee did not commence said paving within a reasonable time, the assessment certificate was void and the court erred in ignoring the finding of the jury as immaterial, and erred in rendering judgment against appellant, notwithstanding said finding.

Since appellee's contract with the city required it to commence paving within fifteen days after notice from the city engineer to do so, such time of commencement was indefinite, and under the law appellee was required to commence work within a reasonable time, but since the jury found this was not done, the certificate became null and void, and the court should have rendered judgment for appellant in accordance with the jury's finding.

Appellee was estopped to recover a personal judgment on the certificate sued on because the undisputed evidence showed that appellant sold the property to H. H. Haggard before any paving was done, believing that no lien therefor existed, and did not protect himself against any such lien and by reason of such unreasonable delay appellant was and will be seriously injured if the judgment is allowed to stand, and was placed in a worse position than he would have been if the contract had been complied with. Andrae v. Watson, 73 S. W., 991; Barber Asphalt Paving Co. v. Loughlin, 9 S. W., 948; Bush v. Merrill, 206 S. W., 834 (Com.

App.); Barber Asphalt Paving Co. v. Riggs, 68 S. W., 1043 (Mo.); Hilbert v. Barber Asphalt Paving Co., 81 S. W., 496 (Mo.); Paul v. Conqueror Trust Co., 102 S. W., 1070 (Mo.); Gilsonite Construction Co. v. Ark., etc., Coal Co., 103 S. W., 93 (Mo.); Heft v. Payne, 31 Pac., 884 (Calif.); 44 C. J., sec. 3017, p. 609; Page & Jones on Assessments, sec 535.

*R. Wayne Frank* and *Milburn E. Nutt,* for appellee.

Time not being the essence of the ordinance of the City of Wichita Falls herein, and time not being of the essence of the contract herein between the City of Wichita Falls and L. E. Whitham & Company for the purpose of forfeiture, but merely for the purpose of penalty and liquidated damages, the City of Wichita Falls having approved and accepted the work herein by its Board of Aldermen, such acceptance was, and is final and conclusive that the work was commenced and finished within a reasonable time in the absence of fraud and bad faith, and the trial court herein did not err in disregarding and ignoring the finding of the jury herein as immaterial and did not err in rendering judgment against appellant notwithstanding said finding. Messer v. Marsh, 183 N. W., 602; Fitzgerald v. City of Huron, 199 N. W., 775; Robertson v. Southern Bitulithic Co., 227 S. W., 453; Hubbell v. Des Moines, 150 N. W., 701; O'Shouessy v. Sioux City, 184 N. W., 728; Blome v. Hurd, 185 S. W., 55; Herring v. City of Mexia, 290 S. W., 792.

MR. COMMISSIONER CRITZ delivered the opinion of the court.

This case is before the Supreme Court on certified question from the Court of Civil Appeals for the Second District at Fort Worth. The certificate fully states the case, and we therefore copy the same.

"The City of Wichita Falls is an incorporated city under the Home Rule Amendment to the Constitution, having more than 5,000 inhabitants. On November 1, 1926, acting by and through its Board of Aldermen, the City of Wichita Falls passed and approved a certain assessment ordinance No. 846 fixing a charge and lien against abutting property and the owners thereof to evidence and secure a part of the cost of improving a portion of Taylor street in said city upon which street lot 16, block 22, Floral Heights Addition to said city, being the property in controversy herein, abuts, when same was owned by appellant J. A. Fisher herein, in the sum of $901.95, said property fronting 150 feet on said street.

"Likewise on November 1, 1926, the City of Wichita Falls, acting by its Mayor and City Clerk, executed a contract with appellees herein, for the improving of said street and all property abutting thereon, by the construction of certain specified pavement, and then said parties executed a sub-contract whereby the said city agreed and obligated itself, as its pro rata part and share of said work, to do all the necessary excavating, grading, and filling for said project.

"On September 12, 1927, F. M. Rugeley, City Engineer of said City, being a ministerial officer thereof, certified to said Board of Aldermen that the contractors, being the appellees herein, had fully completed said improvement in accordance with the plans and specifications therefor, and recommended the acceptance of the work.

"Acting upon said City Engineer's recommendation, the Board of Aldermen by resolution duly considered, passed, approved, and accepted the paving improvements on behalf of the city, and authorized the issuance of certificates of Special Assessment evidencing the indebtedness of the owners of the property as shown thereby, and in accordance with said resolution the Mayor and City Clerk executed and duly issued the certificate herein, No. 30-129, which recites in substance that same evidences a personal charge and assessment against J. A. Fisher, appellant, for his pro rata part of the cost of said improvements as shown thereby, and that all proceedings with reference to said work have been regularly had in compliance with law, and that all prerequisites to the fixing of the claim of personal liability have been performed.

"Upon the continued default of the said J. A. Fisher in paying the first installment of said claim and charge, suit was brought on April 16, 1929, by the owners of the certificates, the appellees herein, to enforce collection of the full amount due. H. H. Haggard was made a party to said suit, because he had bought the property from the appellant Fisher, and was the owner thereof at the time of filing suit. Upon the trial the suit was dismissed as to the said H. H. Haggard upon plaintiff's motion, for it was shown that he did not assume or agree to pay the paving indebtedness, and that plaintiffs (appellees) relied upon a personal judgment against J. A. Fisher as owner of the property when the assessment charge was made, it being his homestead at that time and no lien being fixed.

"At the time of the trial defendant Fisher, being appellant herein, answered by general demurrer, general denial, and plea of homestead, and by way of special answer plead that the certificate was void as a personal charge against him because the work was not done immediately after the contract was entered into, and the pavement should have been done within 115 days from date of said contract, and further, that time was the essence of said contract, although written notice was to be given by the City Engineer before the contractors would be required to start work. Appellant admitted by his answer that said city did not give written notice to the contractors to commence paving, as specified by the contract.

"To the defendant's answer appellees filed their first supplemental petition, pleading a demurrer to defendant's special answer and alleged defenses; also pleading by special exception an estoppel by the 20-day statute of limitation; that the delay incident to the construction of the pavement was not a jurisdictional defect or omission; that even though

the property in controversy was the homestead of the defendant Fisher, he was nevertheless personally liable for the cost of the improvements, and further that the City of Wichita Falls, a Home Rule City, had by section 16, article 1175, full and exclusive power to improve the street and had all rights and legislative powers incident thereto.

"Upon the trial one special issue was submitted to the jury that was as follows:

" 'Find from a preponderance of the evidence before you whether the plaintiff L. E. Whitham & Company commenced the excavating and paving of the property involved within a reasonable time after November 1, 1926?'

"To which the jury answered 'no'.

"Upon plaintiffs (appellees) motion for judgment notwithstanding the verdict, made in open court, the court, having fully informed himself upon the law applicable to the case at bar, thereupon held that the verdict of the jury was upon an immaterial issue, and further that appellant's (defendants) contention of reasonable time was not a legal defense to plaintiffs' cause of action in the premises, and thereupon adjudged personal judgment in favor of appellee (plaintiffs) for the full amount due, as evidenced by said special assessment certificate.

"Appellant in due time filed his motion for a new trial, which was in all things overruled by the trial court on August 31, 1929, and thereafter on September 17, 1929, appellant perfect his appeal to this court.

"The sixth paragraph of the ordinance, by virtue of which the improvement under consideration was made, reads as follows:

" 'The fact that the improvements herein mentioned are being delayed pending the effect of this ordinance, and that the condition of said portion of street endangers the public health and safety, constitutes and creates an urgent public necessity requiring that the rules providing that ordinance be read at more than one meeting and for more than one time be suspended, and requiring that this ordinance be passed and take effect as an emergency measure, and such rules are accordingly suspended, and this ordinance is passed as an emergency measure, and shall be in force and effect immediately from and after its passage.'

"Section 3 of the contract between appellee and the City of Wichita Falls under which the paving was done with reference to the time of commencement and completion reads in part as follows:

" 'The contractor agrees to begin the work in fifteen days after being notified in writing so to do by the City Engineer, but shall not be required to commence said work or any part thereof until proceedings against the owners of property abutting upon the said street have been had assessing the proposition of cost of said improvements which is to be assessed against them and their property.

" 'The contractor shall prosecute said work with diligence after the

commencement thereof and agrees to deliver the same in complete finished condition in accordance with the said specifications within one hundred (100) working days after the commencement thereof.' * * *

"J. A. Fisher, appellant, after testifying that the property described in the assessment was his homestead until the latter part of July, 1927, at which time he had sold and moved out of the premises, testified about appellees' efforts to get him to sign a mechanic's lien contract as follows:

" 'After I sold the property and moved, they saw me about the paving of that street. I suppose it was the bookkeeper who saw me, I do not know. A young fellow came down to my house. He told me that he was representing L. E. Whitham & Company. He wanted me to sign a contract. I did not pay very much attention to the contract. It was a contract for the paving of that street. I told him that it was not my property. I had sold the property; I supposed that the paving was all dropped. I had not heard anything of that paving for a year prior to that. I told him that I did not want to pave it, and it was not my property. I told him not to pave it.'

"The witness further testified as follows:

" 'When I sold this property to H. H. Haggard, I did not sell it to him with any understanding on my part, with reference to there being a lien on it. I understood at that time there was not any. It had never been discussed by Mr. Haggard and me. It was my understanding that they were not going to put down the paving. I arrived at that conclusion because of the delay.'

"The following stipulation appears in the statement of facts at page 7 thereof:

" 'It is agreed it was the 26th day of August, 1927, when they started excavating and grading, and the improvements were completed on September 12th, 1927.'

"The witness Fisher further testified as follows:

" 'I owned one-fourth of the property in the block. It was my homestead. I was approached as late as July 30, 1927, to sign a mechanic's lien and I refused. I do not know just the exact date it was, it was after I moved out and sold, I remember that. I guess that I refused to sign at all times, I did not sign. The only paving of this particular project was just that little gap between two streets.'

"H. H. Haggard, one of the original defendants, who purchased the property from appellant August 16, 1927, testified with reference to what he did when he found that appellees were contemplating paving this street as follows:

" 'With reference to the first knowledge I had that they were going to lay that paving up there, well, one morning about four or five days after I moved there, to be exact on the 24th day of August, they sent some teams up there and began to excavate. I asked them what they

were going to do, and they said they were going to pave that street. I told them not to do it. They said "see the paving company." I went to the office and asked for the manager and they said they were going to pave it and were not looking to me for any money at all, and then I wasn't satisfied with that and I wrote them a letter and registered it, and got the receipt back.

· " 'I had phoned to Whitham & Company's office, I asked for the manager and some one answered as the manager. They said that they were not looking to me for the payment. In addition to that, I wrote them a letter. This is a copy of that letter. That is a return receipt that I registered to them, and here is the receipt for the register.'

"The letter referred to in this testimony reads as follows:
" 'August 24, 1927.
" 'Messrs. L. E. Whitham & Co., 1901 Austin St., Wicihta Falls, Texas.
" 'Gentlemen:
' 'Please be advised by this that I have purchased the property located at 2400 10th Street (corner Taylor & 10th) formerly owned by J. A. Fisher, that I use and occupy same as my homestead. I understand you contemplate paving Taylor Street on the East of this property. When I bought this property I had no notice of any paving to be done and as I am not able to have same done at this time, this will notify you that I will not be responsible for the payment of said paving along this property.

" 'I take this means of notifying you of my intention before the pavement is laid. I remain

" 'Yours respectfully,
" '_____,'

"This witness testified that he received a letter from appellee dated January 10, 1929, with reference to the payment of the installments on the certificate in question which claimed a lien against the property. The letter referred to is shown on page 34 of the statement of facts, from which we quote the first sentence.

" 'As soon as we finished the paving improvement to your lot here, the city of Wichita Falls issued us a paving certificate in accordance with state law, showing a valid lien against your property.'

"George Dobson, the street superintendent during the time involved, testified in part as follows:

" 'The city did the excavation work some time in the early part of the summer of 1927. It was July or August—I could not tell you the exact date of that.

" 'My department is under the supervision of the city engineers at the time; all of that work is under the supervision of the city enginers, and all excavating work and things of that nature.'

"This witness likewise testified that L. E. Whitham, one of the partners composing L. E. Whitham & Company, appellee herein, instructed

them when to commence work on different paving projects. We quote his testimony as follows:

" 'As to who told us to go out there when we did do it, we had a list of it, Mr. Whitham sent Mr. Hunt a list of it, a list of this paving that was coming up each month. Mr. Whitham gave us a list of it that was ready to do. It came from Mr. Whitham. If Mr. Whitham had ordered us to do it immediately we could not have done it. We just took it as we could get to it. In a way we followed L. E. Whitham & Company's directions, as he could get it ready and us ready for it.'

"Later on this witness testified as follows:

" 'If Mr. Whitham had directed us to have got to that earlier, with proper directions we could have done that, if we had left off something else.

" 'To the best of my recollection we were on there excavating about three days, but I would not say for sure.'

"Milburn E. Nutt, attorney for appellee, testified that the paving was not commenced earlier because the security of the cost of doing the paving was not closed until August 25, 1927. In this connection we quote his testimony further as follows:

" 'I think that there were only four pieces of property on Taylor Street between Ninth and Tenth Street. One of them we did not pave. We skipped S. E. Cockrell. J. A. Fisher's was a homestead; we paved that. There were two more left. It did not take us ten months to get the two. It took the lawyers and the persons handling the estate of John Serrain. We did not pave the others without signing, as we did Mr. J. A. Fisher's, because no personal judgment could be had against the deceased. Cockrell was out of the State temporarily. We had the option to pave that; we paved it. Cockrell's was not paved; it was skipped.'

"No attack has been made upon the regularity of the several ordinances and proceedings leading up to the assessment in question, and there is no direct evidence in the record that the city engineer ever notified the contractor when to begin the improvement as contemplated by section 3 of the contract under which the paving was done; nor was the verdict of the jury questioned on the ground that the evidence fails to support it. The contention of appellant is thus stated in his first proposition, to-wit:

" 'Under the terms of the contract between appellee and the city, the former was required to commence paving within a reasonable time from the date of the contract and complete same within one hundred days thereafter, hence, after jury found that appellee did not commence said paving within a reasonable time, the assessment certificate was void and the court erred in ignoring the finding of the jury as immaterial, and erred in rendering judgment against appellant, notwithstanding said finding.'

"In support of the proposition so stated, appellant cites the following authorities, towit: Andrae v. Watson (Texas Civ. App.), 73 S. W.,

991; Barber Asphalt Paving Co. v. Loughlin, 44 Texas Civ. App., 580, 98 S. W., 948; Bush v. Merrill (Texas Com. App.), 206 S. W., 834; Hilbert v. Barber Rsphalt Paving Co., 107 Mo. App., 385, 81 S. W., 496; Paul v. Conqueror Trust Co., 125 Mo. App., 483, 102 S. W., 1070; Gilsonite Construction Co. v. Ark., etc., Coal Co., 205 Mo., 49, 103 S. W., 93; Heft v. Payne, 97 Calif., 108, 31 Pac., 844, 44 C. J., sec. 3017, p. 609; Page & Jones on Assessments, secs. 535, 500.

"Appellees' contention on the other hand is that this contract is between the City and the paving contractor; that the property owner is not a party thereto for the purpose of having a jury determination as to whether the work was done within a reasonable time as in inter parties contracts, for the reason that the party for whom the work has been done, namely, the City, has already by its acceptance of the work adjudged that the work was done within a reasonable time, which acceptance and approval of the work is final and conclusive, in the absence of fraud or bad faith. In other words, the prime question in the case at bar for this court to determine is this: In municipal contracts, where time is neither of the essence of the ordinance or the contract, and where the City has already determined by its acceptance of the work done under the contract that the work was done within a reasonable time, can a property owner who is not a party to that contract, in a suit on the assessment certificate, have a jury determination on the question of reasonable time, in the face of legislative determination by the City that the work was done within a reasonable time?

"We are not altogether fully agreed, because of which and because of the importance of the questions presented and of an early authoritative determination thereof, we deem it advisable to certify to your Honors for determination the following questions, to-wit:

"1. Should the verdict of the jury, to the effect that L. E. Whitham & Company did not commence 'the excavating and paving' of the property involved within a reasonable time after November 1, 1926' be disregarded as immaterial, as ruled by the court below?

"2. If not, then does the fact so found relieve the appellant J. A. Fisher from the personal obligation that appellees seek to enforce; in other words, did the trial court err in rendering judgment in favor of L. E. Whitham & Company notwithstanding the verdict of the Jury?"

"'* * * * * *'"

The question here presented is simply this:

Where a paving contract between a city and a paving company does not specify when the work is to begin, and does not make time its essence, can such a length of time elapse between the making of the contract and the commencement of the work as will render an assessment against an abutting property owner unenforcible, where it is shown that the condition of the property owner has changed since the contract was made; that

such changed condition was known to the contractor before the work was begun; and that the owner has been injured by the delay, or, in the absence of fraud or bad faith on the part of the city and contractor, does the acceptance of the paving by the city bind the property owner regardless of the time taken to begin the work, the changed condition of the property owner, the resultant injury, and the fact that the paving company was fully apprised of such changed condition and resultant injury before it began the work?

We think the mere statement of the question demonstrates the fallacy of the contention of the paving company, to the effect that the acceptance of the work by the city is always absolutely binding on the property owner simply because no fraud or bad faith was shown.

In our opinion the correct rule, as applied to the facts of the instant case, is, that where a paving contract between a city and a paving contractor does not make time its essence, and provides no definite time for the work to begin, the acceptance of the work by the city is not final, and binding on the property owner, where there has been a changed condition of the property owner, and an unreasonable delay in beginning the work; which delay has resulted injuriously to the property owner, and the paving company has notice of such facts.

In Fitzgerald v. City of Huron, 47 S. D., 533, 199 N. W., 775, 777, cited by the paving company in its brief, it is said: "It may well be seen that the work had been completed and that both the City Engineer and the City Commissioners were apparently satisfied. Although there was some delay in completeing the work, we cannot assume that the appellants were injured by such delay."

The closing words of the above holding, "we cannot assume that the appellants were injured by such delay", are very significant, and demonstrate that the court intended to say that a different existed between a case where injury resulting from the delay was shown, and a case where no injury was shown.

In Robertson v. Southern Bitulithic Co., 190 Ky., 314, 227 S. W., 453, cited by the paving company, the court said: "As between the contractor or the city on the one side, and the property owners on the other, time was not of the essence of the contract. The delay did not disadvantage the appellants. As a matter of fact, had the street been constructed under a contract executed in the spring of 1917, the cost of materials at that time would have increased the amount apportioned against each of the appellants; they profited by the earlier made contract. The time for doing work relating to public improvements is within the municipal discretion, nor did the commissioners violate this discretion when they extended the time within which the work should be done."

Further on in the opening the court said: "It would not be meting out justice to the contractor, who has admittedly performed the obliga-

tions of his contract, to shoulder this loss on him when the city is not liable and where the property owner has received the benefit of the work."

It will be noted that in the above case the court expressly held that time within which public work is to be done is within municipal discretion, but that such discretion can be violated. Also the court expressly based its conclusions on the fact that the delay had not injured the property owner. The words of the opinion to the effect that it would be unreasonable to shoulder the loss on a contractor where he has done the work, and the property owner has received the benefit thereof, is authority to say that where an unreasonable length of time has elapsed before the beginning of the work, and such delay has injured the property owner, it would be unreasonable to saddle the loss occasioned by the delay on the property owner, and this is certainly doubly true where the paving company was fully apprised of the facts.

In Hubbell v. Des Moines, 168 Iowa, 418, 150 N. W., 701, 703, cited by the paving company, it is said:

"The work had not been commenced at the time it was to be completed, and on this ground it is contended the assessments were void. The city council by resolution extended the time of performance until May 1st following, and to this the contractor's bondsmen consented. The manner of extending time in so far as the city is concerned was directory. Not only did the contract omit any condition making time of its essence, but, in prescribing a per diem penalty for delay and the conditions on which the time of performance might be extended, clearly indicated that completion after the day fixed therefor was contemplated as a possibility. No statute or ordinance exacted that a specific period be fixed in the agreement within which to be performed or that this be done before a day named. The only conditions with respect to time are to be found in the contract, and, as these contemplated an extension might be necessary, it ought not to be said that such extension, if not beyond a reasonable limit within which the improvement, in view of the circumstances, should be completed, will invalidate the contract and obviate liability for the assessments. Heman v. Gilliam, 171 Mo., 258, 71 S. W., 163; Schibel v. Merrill, 185 Mo., 534, 83 S. W., 1069; City of Sedalia v. Smith, 206 Mo., 346, 104 S. W., 15; Jenkins v. Stetler, 118 Ind., 275, 20 N. E., 788; City of Leavenworth v. Mills, 6 Kan., 288; 1 Page & Jones on Assessments, 538.

"The only available ground of objection to an abutting property owner where the conditions are as in the contract in suit is that the performance has not been within a reasonable time, and we are not ready to say, in view of weather conditions of this climate, and without any showing, that the improvement was not completed within a reasonable time."

In the above opinion it will be noted that the court expressly holds "it ought not to be said that such extension, if not beyond a reasonable

limit within which the improvement, in view of the circumstances, should be completed, will invalidate the contract and obviate liability for the assessments." A casual reading of this holding demonstrates that the Supreme Court of Iowa was of the opinion that the contract cannot be unreasonably extended, and that the reasonableness or unreasonableness of the extension must be determined by the attending circumstances.

In Blome v. Herd, cited by the paving company, 185 S. W., 55, 57 (writ ref.), the Court of Civil Appeals held:

"It is insisted that inasmuch as, from the allegations made, it appears that the city accepted the work done by Rudolph S. Blome Company through its authorized officers, that such acceptance is conclusive, in the absence of an allegation of fraud or collision in the acceptance. In now passing upon the ruling of the trial court presented in the assignment, we wish first to note that appellants' contention is made contingent on the assumption that the plea fails to embody a charge of fraud; and that under the circumstances now to be stated that we will give to the plea a wider reach or scope than is, perhaps, to be plainly defined by the terms of the plea, for later evidence in support of the plea was admitted and heard by the court and evidently considered by him, and, while the evidence was objected to on the ground that the approval of the work by the city engineer was conclusive, no objection was urged because of an insufficiency of the plea to authorize its admission, and this evidence, in our judgment, goes beyond a good-faith approval of the work by the city engineer. Reading some of the evidence, which, as appears from the court's findings, was evidently credited by the trial court, we fail to see how the work could have been approved without marked incompetency, inexcusable negligence, or downright fraud on the part of the city authorities whose duty it was, under the contract with Rudolph S. Blome Company, to supervise and approve the work. It certainly met the measure of the allegation that it was 'without due regard to the rights of the property owners on said street, including the plaintiff.'

"*   *   *   *   *

"There was other testimony of like tendency, which, if credited by the court, as was evidently done, as we have already stated would authorize an inference of fraud, and we know of no decision that goes so far as to hold that a citizen against whom a personal obligation has been imposed for paving, and to secure which a lien has been declared upon his property, is helpless under circumstances of the kind stated.

"For the purpose of the present discussion, it may be conceded that a city engineer's act in approving an improvement of the character under consideration, when done in good faith, and with due regard to the rights of the abutting owners, will be conclusive as against all attacks dependent upon matters of judgment and honest differences of opinion as to the character of the work; but it ought not to be so held, we think, where

the departures from specifications are so great as to amount to an inference of fraud, or to constitute the work done substantially a different work from that contracted for."

A reading of the above opinion will demonstrate that the court there held that the act of a city in approving an improvement when done in good faith, and with due regard for the rights of abutting property owners is conclusive. Certainly the converse is also true, that is, if the act is not done in good faith, or is done without due regard to the rights of the abutting property owners it is not conclusive. This case only involved the quality and quantity of the materials, and the quality of the work.

In Hilbert v. Barber Asphalt Paving Co. (Mo.), the court held as follows: "The defendant did not complete the improvement within the 90 days stated in the contract. The law is that where a definite time for the completion of an improvement is specified in the ordinance covering it, or, if no time be specified therein, but is made of the essence of the contract by the stipulation of the parties, then, in either case, if the work be not completed within the time so specified, the tax bills will be void. Neill v. Gates, 152 Mo., 585, 54 S. W., 460; Childers v. Holmes (Mo. App.), 68 S. W., 1046; Barber Asphalt Co. v. Ridge, 169 Mo., 376, 68 S. W., 1043; Rose v. Trestrail, 62 Mo. App., 352; McQuiddy v. Brannock, 70 Mo. App., 535; Whittemore v. Sills, 76 Mo. App., 248; Safe Deposit Co. v. James, 77 Mo. App., 616; City v. Davis, 80 Mo. App., 574; Ayres v. Schmohl, 86 Mo. App., 349; Winfrey v. Linger, 89 Mo. App., 159. As the ordinance ordering the improvement did not specify any time for the completion of the work, and as it was not made of the essence of the contract by the express stipulation of the parties thereto, it remains to be determined in what time the defendant was required to complete the improvement. Carlin v. Cavender, 56 Mo., 286, was a suit on a special tax bill issued by the city engineer of the city of St. Louis to defray the cost of improving a street in front of the property of defendant. The ordinance authorizing the work fixed no time for its completion. There was a time fixed in the contract for the completion of the work, but there was no stipulation making it of the essence of that contract. The work was not completed within the time limited by the contract, and this was one of the defenses pleaded and relied on in the case by the defendant property owner. The case went to the Supreme Court, where it was said by Judge Wagner in the course of his opinion, that: 'There is obviously no merit in the point that the work was not completed within the time limited by the contract. There is nothing to show that time was of the essence of the contract. For prudential reasons, the engineer suspended the work for a time, and the contractors assented to the suspension; but, when it was deemed advisable to proceed, the work was then completed and received. *It does not appear that the defendant suf-*

*fered any injury by the delay.'* Strassheim v. Jerman, 56 Mo., 104, approved the ruling made in Carlin v. Cavender. In Ayres v. Schmohl, 86 Mo. App., 349, it was said that the vital difference between that case and Carlin v. Cavender, ante, was that in the latter the contract did not make the time prescribed of the essence of the contract, while in the former it did. It was also further said in the same case, that 'Those cases (Carlin v. Cavender and Strashheim v. Jerman) held that where the ordinance did not fix the time, and the contract did, a failure to complete the work within the time stated in the contract did not necessarily void the bills; there being nothing to show that it was of the essence of the contract, *or the delay was unreasonable.'* The rulings of this court, as was said in Ayres v. Schmohl, have been that the time in which public work should be done is a legislative function, and that it cannot be delegated to the city engineer, which rulings are in harmony with that made by the Supreme Court in Neill v. Gates, supra. It inevitably follows from these considerations that the time for the completion of the work fixed by the engineer and inserted in the contract was, at most, but directory. *Where there is no definite time fixed for the completion of the improvement in the ordinance ordering it, and where the contract entered into in pursuance thereof does not make time of the essence of the contract, it may now be regarded as the settled law of this jurisdiction that the proceeding should be construed to require the completion of the improvement within a reasonable time,"* etc. (Italics ours.)

In the above case it is shown that the Missouri rule is that where the delay is unreasonable, and injury to the abutting property owner is shown by such delay the contract is unenforcible against the property owner.

We find no fault with the rule announced in the case of Blome Co. v. Herd (Texas Civ. App.), 185 S. W., 53, supra, to the effect that the acceptance of paving by the city is conclusive on the abutting property owner as regards quality and quantity or workmanship and materials when such acceptance is made in good faith and with due regard to the rights of abutting property owners, and the rule announced in Herring v. City of Mexia (Texas Civ. App.), 290 S. W., 792, which, in principle, is to the same effect. The principle involved in these two cases applies to the character and quantity of material, and manner of executing the work, and is corrolary to the rule that if there is a substantial compliance with the terms of the contract in these particulars the act of acceptance by the city is binding on the property owner. We think, however, that in a case where there is no substantial compliance with the terms of the contract as to quality or quantity of materials, or kind and character of construction or work, the owner is not bound by the acceptance by the city. Certainly the city cannot bind the owner to accept, to his injury, compliance with a purely statutory and involuntary con-

tract, on his part, unless there is at least a substantial compliance therewith by the paving company.

Also we think it is the settled law of this state that where the contract prescribes no time when work is to begin the law presumes a reasonable time, and what is a reasonable time depends on the facts and circumstances of the case. Self v. King, 28 Texas, 552; Hart v. Bullion, 48 Texas, 278.

In the case at bar it is conclusively shown that the property here involved was at all times the homestead of Fisher and later his vendee, Haggard; that Fisher sold to Haggard after the contract was made and before any work had begun; that the cost of the paving was not taken into consideration in the sale price, and not assumed by Haggard; that the entire cost of the assessment must fall as a loss on Fisher if he is compelled to pay it; and that the paving company was fully apprised of these changed conditions, and resultant loss to Fisher, before they began the work. Also the jury found, on probative evidence in the record, that the delay was unreasonable. In such a case the property owner was released from liability to pay the paving certificate, and the trial court committed error in refusing to give that effect to the verdict of the jury.

Of course we do not intend to hold that the city did not waive the delay as affecting its own liability, but we do hold that where the delay is unreasonable, and an abutting property owner, whose condition has changed since the making of the contract, is injured by such unreasonable delay, and the paving company is fully apprised of the change of condition, and injury resultant therefrom, that in so far as the property owner's rights are concerned, the city cannot bind the property owner by accepting the paving.

The paving company contends, in a supplemental brief filed in this court, that the acceptance of the paving by the city was the exercise of a legislative function, duly authorized by law, and was therefore the city acting in regard to a matter involving its discretionary powers, and under the rule announced in Stone v. City of Wylie (Texas Com. App.), 34 S. W. (2d) 842, such acceptance was absolutely binding on the property owner in the absence of a showing of capriciousness, arbitrariness, fraud or bad faith. We do not deem it necessary for us to pass on the question as to whether acceptance by the city involved an act of municipal discretion. If such be admitted it would not alter the result here. It would constitute an abuse of discretion on the part of the city and the exercise of municipal power in a capricious and arbitrary manner so far as the property owner is concerned, for the city to attempt to bind him to pay a paving certificate, by accepting an improvement after an unreasonable time has elapsed between the making of the contract and the beginning of the work, where in the meantime conditions have changed

as regards the rights of the property owner, with resultant loss to him, and this changed condition was known to the paving company.

The paving company contends that the defense here made by the property owner is barred or precluded by article 1096, R. C. S. of Texas, 1925. This statute reads as follows: "Any property owner, against whom or whose property any assessment or reassessment has been made, shall have the right within twenty days thereafter, to bring suit to set aside or correct the same, or any proceeding with reference thereto, on account of any error or invalidity therein. But thereafter such owner, his heirs, assigns or successors, shall be barred from any such action, or any defense of invalidity in such proceedings or assessments or reassessments in any action in which the same may be brought in question."

This statute can have no application to this case. The 20-day limit there fixed begins to run from the date of assessment or reassessment. Clearly the statute only applies to a contest of such matters as have transpired up to and including the assessment or reassessment. To attempt to give application to the statute in this case would be to hold that the remedy was barred before the injury had occurred. Manifestly, such a construction would render the statute invalid.

We recommend that the questions certified to answered as above indicated.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

C. M. CURETON, Chief Justice.